NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TROY LEE SULLIVAN, *Defendant/Appellant.*

No. 1 CA-CR 15-0559
FILED 8-25-2016

Appeal from the Superior Court in Maricopa County
No. CR2014-001663-001
The Honorable Jose S. Padilla, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Chief Judge Michael J. Brown and Judge Kenton D. Jones joined.

---

**G O U L D**, Judge:

¶1 Troy Lee Sullivan ("Defendant") appeals from his conviction and sentence for one count of sale of narcotic drugs, a class two felony. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 This case arises from an undercover investigation involving complaints of drug deals being conducted in a neighborhood. As part of the investigation, two undercover detectives drove into the neighborhood to attempt to purchase drugs. Shortly after the detectives drove into the neighborhood, a man, later identified as Defendant, approached the driver's side window of the car and offered to sell them some drugs.

¶3 Detective L., the driver, asked Defendant for $20 worth of crack cocaine. Defendant initially showed him some drugs, but it was less than what he had requested, so Defendant told the detectives to drive around the corner and he would get them more. Not long after they did so, Defendant returned; he again approached the driver's side window, and sold the detectives $32 worth of crack cocaine.

¶4 After completing the transaction and leaving the neighborhood, Detective L. relayed a description of Defendant to a patrol officer so that he could contact Defendant and obtain his identification. Detective L. described Defendant as a black male, approximately six feet tall, wearing a black sweatshirt with the words "For Life" written on the back. The patrol officer drove into the neighborhood and saw an individual matching that description; he made contact with Defendant and took down the information from his driver's license.

¶5 Defendant's information was relayed to Detective L., who performed a records check. Based on the records check, Detective L. was able to obtain a photograph and confirm that Defendant was the individual he had purchased cocaine from earlier that day. Detective L. showed the

photograph to the other undercover detective, and he also identified Defendant as the person who sold them drugs.

¶6        Later, Defendant was arrested and charged with one count of sale of a narcotic drug.

¶7        Before trial, Defendant filed a motion to suppress the detectives' identification and requested a *Desserault* hearing. Defendant argued the detectives' use of the booking photograph was unduly suggestive and unreliable. The court denied Defendant's motion to suppress, finding that even if the identification was unduly suggestive, it was reliable.

¶8        During trial, defense counsel continued to attack the reliability of the detectives' identification of Defendant. Her cross-examination of Detective L. focused on the fact that in order to identify Defendant, he (1) used an allegedly suggestive photograph from a law enforcement database and (2) used only one photo, rather than a photo line-up. Thus, defense counsel repeatedly questioned Detective L. about his decision to use a picture showing Defendant "had been stopped by officers before." On redirect, the prosecutor followed-up on defense counsel's line of questioning, but he mistakenly referred to the photograph as showing Defendant had been "arrested" before.

¶9        Defense counsel objected to the prosecutor's question. Initially, the court did not catch defense counsel's distinction between being "stopped by officers" and "arrested," so it overruled the objection. Once out of the presence of the jury, Defendant moved for a mistrial. The court denied Defendant's motion. It reasoned that defense counsel had opened the door to the State's question; however, the court stated it would address whether the misstatement was overly prejudicial if it happened again.

¶10        The prosecutor did not mention the nature of the photograph for the remainder of the trial; defense counsel, however, raised the issue again, questioning the second undercover detective about the source of the photograph and repeatedly mentioning the issue during her closing argument.

¶11        The jury found Defendant guilty. Following a trial on aggravating circumstances, the jury also found Defendant committed the offense while on felony release. Defendant was sentenced to 12.5 years' imprisonment. He timely appealed.

## DISCUSSION

**¶12**        Defendant argues the trial court erred in denying his motion for mistrial.  Specifically, Defendant claims he was denied a fair trial because the prosecutor improperly introduced evidence of his prior arrest. *See* Ariz. R. Evid. 404(b) (evidence of prior bad acts is generally inadmissible).

**¶13**        A mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003) (quoting *State v. Adamson*, 136 Ariz. 250, 262 (1983)).  A trial court's decision to deny a motion for mistrial is reviewed for an abuse of discretion, and we "'will not reverse a conviction based on the erroneous admission of evidence' unless there is a 'reasonable probability that the verdict would have been different had the evidence not been admitted.'" *Dann*, 205 Ariz. at 570, ¶¶ 43-44 (quoting *State v. Hoskins*, 199 Ariz. 127, 142-43, ¶ 57 (2000)).  Additionally, the invited error doctrine "prevents a defendant from introducing forbidden evidence and then seeking reversal based on its erroneous introduction." *State v. Stuard*, 176 Ariz. 589, 600 (1993).

**¶14**        The court did not abuse its discretion in denying Defendant's motion for mistrial, because any error was invited by Defendant.  Defense counsel, not the prosecutor, raised the issue of Defendant's prior arrest during her cross-examination of Detective L.  In fact, defense counsel questioned both detectives about whether the photograph showed Defendant "had been stopped by police officers in the past."  In contrast, the prosecutor did not raise this issue during his direct examination of either detective; his misstatement about the "arrest" occurred during his re-direct examination of Detective L.

**¶15**        Defendant claims, however, there is a difference between the prosecutor mentioning a prior "arrest" and his own counsel's reference to a prior "stop."  We disagree.  Defense counsel's questions included the following information: the police had, on a prior occasion, stopped Defendant, taken his picture, and recorded his picture in a police database.  For the average juror, this line of questioning clearly implied the photograph was most likely related to a prior arrest.

**¶16**        Finally, there is no "'reasonable probability' that the verdict would have been different had the evidence not been admitted," *Dann*, 205 Ariz. at 570, ¶ 44 (quoting *Hoskins*, 199 Ariz. at 142-43, ¶ 57), let alone that

fundamental error occurred. *See Stuard*, 176 Ariz. at 601 ("When defense counsel unintentionally 'invites' error, the error must be fundamental before relief will be granted."). Defendant was closely observed by two undercover detectives during a face-to-face interaction. Based on the physical description given by these detectives, a uniformed officer contacted Defendant shortly after the sale took place. Additionally, Defendant was in the same neighborhood where he had just conducted the drug sale.

¶17        Accordingly, we affirm. We conclude the prosecutor's brief statement Defendant had been arrested, when placed in the context of defense counsel repeatedly mentioning that Defendant had been "stopped" by the police, did not improperly influence the jury. *Dann*, 205 Ariz. at 570, ¶ 46.

## CONCLUSION

¶18        For the reasons above, Defendant's conviction and sentence are affirmed.

